# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA
## HUNTINGTON DIVSION

| | |
|---|---|
| JOE COX and DENA COX, on behalf of themselves and all others similarly situated, <br><br> PLAINTIFFS, <br><br> v. <br><br> NEWREZ, LLC d/b/a SHELLPOINT MORTGAGE SERVICING, <br><br> DEFENDANT | CASE NO.: 3:20-cv-00859 <br><br> NOTICE OF REMOVAL |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332(a) & (d), 1441, 1446, and 1453, Defendant NewRez, LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint"), by and through its undersigned counsel, hereby removes this action from the Circuit Court of Putnam County, West Virginia, Case No. CC-40-2020-C-169, to the United States District Court for the Southern District of West Virginia. The class allegations are removable because the aggregate amount in controversy exceeds $5,000,000, there are at least one hundred putative class members, and there is minimal diversity between the parties. *See* 28 U.S.C. § 1332(d). The individual causes of action are removable because the amount in controversy exceeds $75,000, and the parties are diverse. *Id.* § 1332(a).

## BACKGROUND

1. Joe and Dena Cox allege in their First Amended Class Action Complaint that Defendant Shellpoint has assessed illegal and unauthorized fees in connection with their mortgage payments. *See* Compl. ¶ 2. Plaintiffs raise both individual claims and claims on behalf of three putative subclasses of West Virginia consumers. *Id.* ¶¶ 1–2. Their individual claims are based on

alleged misrepresentations of the outstanding balance on their mortgage, as well as fees and expenses that they allege were wrongfully added to their principal balance. *See id.* ¶¶ 87–91. Plaintiffs' class allegations pertain to unauthorized charges and unlawful activities that fall into three main categories: First, fees assessed for making mortgage payments on the phone or online, which they refer to as "Pay-to-Pay" fees. *See id.* ¶ 2. Second, late fees in an amount greater than the amount permitted in their Note. *Id.* ¶ 3. And third, Plaintiffs allege that Shellpoint sent them debt collection communications that improperly referenced Shellpoint's ability to assess attorney's fees in connection with their loan. *Id.* ¶ 4. Plaintiffs contend that these charges and communications are both prohibited by law and are not authorized by the parties' contracts. *Id.* ¶¶ 2–4.

2.  More specifically, Plaintiffs individually allege that they were wrongfully charged approximately $8,553.96 in fees and expenses on top of their principal mortgage balance. *See id.* ¶ 35. Plaintiffs further allege that they were wrongfully charged (i) a $2.50 Pay-to-Pay fee on seven occasions between November 2016 and June 2018; (ii) a separate $5.00 and/or $10.00 Pay-to-Pay fee, called a "Schd Payment Fee Pmt," on four occasions between March 2017 and January 2019; (iii) a $30.00 late fee—even though their Note says late fees will "not [be] more than U.S. $15.00"—on at least 19 occasions, between July 2018 and March 2020; and (iv) that they were sent a letter from Shellpoint in July 2020 stating that it "may collect from the customer any reasonable attorney's fees" and that it was entitled to collect attorney fees "[p]ursuant to the contractual agreement." *Id.* ¶¶ 38–43, 50–53.

3.  Plaintiffs assert causes of action both individually and on behalf of the three putative classes for (i) violations of the West Virginia Consumer Credit and Protection Act, (ii) breach of contract, and (iii) unjust enrichment, as well as an individual claim of (iv) fraud as a

contract defense. Plaintiffs claim "[a]ctual and compensatory damages," as well as "[s]tatutory damages . . . adjusted for inflation" and "[a]n award of interest, costs, and attorney fees." *Id.* at 13: WHEREFORE Paragraph.

4. Shellpoint received the summons and First Amended Class Action Complaint by service of process on November 19, 2020. Copies of all pleadings, processes, and orders in the state court action are attached hereto as **Exhibit A**.

## GROUNDS FOR REMOVAL

**I.  The Court has jurisdiction over the class-wide causes of action under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d).**

5. Under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), federal courts have jurisdiction over any putative class action in which (1) the aggregate amount placed in controversy by the claims of Plaintiff and the proposed class members exceeds the sum or value of $5,000,000, exclusive of interest and costs; (2) the putative class action consists of at least 100 proposed class members; and (3) the citizenship of at least one putative class member is different from that of at least one of the Defendants—*i.e.*, in which there is minimal diversity. 28 U.S.C. § 1332(d). All three requirements are met in this case.

**A.  CAFA's $5,000,000 "amount-in-controversy" requirement is satisfied.**

6. Plaintiffs' allegations place in controversy an amount well in excess of the jurisdictional minimum. It is well settled that a court may rely on a plaintiff's allegations in determining whether the amount-in-controversy requirement has been met. *See, e.g.*, *Scott v. Cricket Comms., LLC*, 865 F.3d 189, 194 (4th Cir. 2017); *JTH Tax, Inc. v. Frashier*, 624 F.3d 635, 638 (4th Cir. 2010); *Evans v. CDX Servs., LLC*, 528 F. Supp. 2d 599, 605–06 (S.D. W. Va. 2007); *Landmark Corp. v. Apogee Coal Co.*, 945 F. Supp. 932, 936–37 (S.D. W. Va. 1996); *see also, e.g.*, *Roppo v. Travelers Com. Ins. Co.*, 869 F.3d 568, 581 (7th Cir. 2017); *Judon v. Travelers Prop.*

*Cas. Co. of Am.*, 773 F.3d 495, 502–07 (3d Cir. 2014); *Perrett v. Wyndham Vacation Resorts, Inc.*, No. 11-cv-61904, 2012 WL 592171, at *2 (S.D. Fla. Feb. 22, 2012). Thus, a plaintiff's good-faith damages and relief claims are to be considered the "amount in controversy" for jurisdictional purposes. *See, e.g.*, *JTH Tax, Inc.*, 624 F.3d at 638; *see also, e.g.*, *Dunlap v. New York Life Ins. Co.*, 958 F. Supp. 589, 591 (M.D. Fla. 1997).

7. The three putative subclasses Plaintiffs seek to represent place in controversy more than $5 million because they include "all West Virginia borrowers" who were charged or assessed a challenged fee, or who "received debt collection communications from Defendant referencing the assessment of attorney's fees," "within four years prior to filing the notice of right to cure through the present," i.e. since August 31, 2016. Compl. ¶¶ 56–58. Because Plaintiffs allege that each instance of charging or assessing the challenged fees, and each receipt of a debt collection communication referencing the assessment of attorney's fees, is a violation of the West Virginia Consumer Credit and Protection Act (the "Act"), and because the Act allows successful plaintiffs to collect both actual damages and $1000 in statutory damages for each violation, the numbers add up quickly. *See* W. Va. Code § 46A-5-101(1).

8. To give one illustration, proposed Subclass C, the "Late Fee Class," challenges all late fees assessed by Shellpoint "in an amount greater than the fee listed in the Note," potentially placing at issue every late fee Shellpoint has assessed since November 2, 2016 (four years before the filing of the complaint). Compl. ¶ 57. Shellpoint has assessed late fees on more than 33,000 occasions during that time period. *See* **Exhibit B**, ¶ 12. Plaintiffs' allegations place at issue each of these transactions: it will be necessary to determine if the late fee assessed complied with the terms of each borrower's Note. If, say, even one-sixth of these late fee assessments were done incorrectly, more than 5,000 transactions are ultimately at issue, each (according to Plaintiffs)

4

potentially carrying the potential of $1000 in statutory damages under the Act. This amount by itself would satisfy the jurisdictional minimum, even before consideration of actual damages (the late fees themselves). For purposes of removal analysis, however, Plaintiffs' allegations call into question all 33,000+ late fee transactions.

9. The claims of the "Pay-to-Pay Class" and the "Attorney's Fee Class" also satisfy the jurisdictional minimum. Shellpoint has charged one-time web payment fees and scheduled payment fees to West Virginia borrowers on approximately 9,000 occasions since November 2, 2016. *See id.* Plaintiffs' allegations challenge each imposition of these fees as a separate violation of the Act, at $1000 each. Accordingly, just the statutory damages placed in controversy by the allegations of Subclass A in Count I also independently satisfy the jurisdictional minimum, even before considering actual damages. So too with the Attorney's Fee Class. Shellpoint has sent more than 20,000 communications referencing the assessment of attorney's fees to West Virginia borrowers since November 2, 2016. *See id.* If, as Plaintiffs allege, each of these communications is a violation of the Act, the statutory damages placed in controversy by the allegations of Subclass C in Count I also independently satisfy the jurisdictional minimum.

10. If actual damages for the alleged violations of the Act in Count I and actual damages for the ten-year period at issue in the breach of contract allegations (Count II) were also considered, the numbers demonstrating satisfaction of the requisite amount in controversy would be even greater. In addition, Plaintiffs seek an award of attorney's fees in an unspecified amount. These attorney's fees too can be considered in determining the amount in controversy.

### B. The putative class consists of at least 100 proposed class members.

11. Under CAFA's numerosity requirement, the putative class must consist of more than one hundred class members. 28 U.S.C. § 1332(d)(5)(B); *Scott*, 865 F.3d at 192. Each of the proposed subclasses meets that requirement.

12. Again, Plaintiffs' allegations on behalf of the class for violations of the Act by themselves establish well in excess of the requisite number of putative class members. The subclass definitions each define the putative class members as "all West Virginia borrowers" who were charged or assessed a challenged fee, or who "received debt collection communications" "within four years prior to filing the notice of right to cure through the present." Compl. ¶¶ 56–58. According to the subclass definitions, the relevant time period for assessing the number of putative class members is thus August 31, 2016 through the present. In that time period, Shellpoint has charged fees for payments online or for future scheduled payments to more than one hundred West Virginia borrowers, has assessed late fees in the amount of $30 to more than one hundred West Virginia borrowers, and has sent debt collection communications referencing the assessment of attorney's fees to more than one hundred West Virginia borrowers. *See* **Exhibit B**, ¶ 13.

### C. There is minimal diversity among the parties.

13. Under CAFA, minimal diversity is met when any member of the class of plaintiffs is a citizen of a state different from any defendant. 28 U.S.C. § 1332(d)(2)(A). In other words, if any class member is diverse from any defendant, minimal diversity is met. *See AU Optronics Corp. v. South Carolina*, 699 F.3d 385, 389 (4th Cir. 2012).

14. Plaintiffs Joe and Dena Cox are citizens of West Virginia. Compl. ¶ 5.

15. NewRez, LLC, d/b/a Shellpoint Mortgage Servicing, is a limited liability company organized under the laws of the State of Delaware. *See* **Exhibit B**, ¶¶ 2–3. "For purposes of diversity jurisdiction, the citizenship of a limited liability company . . . is determined by the

citizenship of all of its members." *Cent. W. Va. Energy Co. v. Mtn. State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011). NewRez, LLC has its principal place of business in South Carolina, and its sole member is Shellpoint Partners, LLC. *See* **Exhibit B**, ¶¶ 3–4. Shellpoint Partners, LLC is a Delaware limited liability company, with its principal place of business in New York. *See id.* ¶ 5. It has two members: NRM Acquisition I, LLC and NRM Acquisition II, LLC. *See id*. ¶ 6. NRM Acquisition I, LLC, a Delaware limited liability company with its principal place of business in New York, has one member, New Residential Mortgage, LLC. *See id.* ¶ 7. New Residential Mortgage, LLC is also the sole member of NRM Acquisition II, LLC, a Delaware limited liability company, with its principal place of business in New York. *See id.* ¶ 8. New Residential Mortgage, LLC is a Delaware limited liability company, with its principal place of business in New York, and its sole member is New Residential Investment Corporation. *See id.* ¶¶ 9–10. New Residential Investment Corporation is a publicly traded corporation organized under the laws of the State of Delaware, with its principal place of business in New York. *See id.* ¶ 11. A corporation is a citizen of both its state of incorporation and the state in which its principal place of business is located. *See* 28 U.S.C. § 1332(c)(1); *Hertz Corp. v. Friend*, 559 U.S. 77, 79 (2010). Accordingly, Shellpoint is a citizen of Delaware and New York for purposes of diversity jurisdiction.

16.  Because Plaintiffs are citizens of West Virginia and Shellpoint is a citizen of Delaware and New York, there is minimal diversity between the parties.

**II.   The Court has jurisdiction over the individual causes of action under 28 U.S.C. § 1332(a).**

17.  Under 28 U.S.C. § 1332(a), federal courts have jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." Both of these requirements are met here.

A.     **The amount in controversy exceeds $75,000.**

18.    In their First Amended Class Action Complaint, Plaintiffs include a stipulation stating that "so long as this case remains in West Virginia Circuit Court or an Article III court," they "shall neither seek nor accept an amount greater than $75,000.00 in this case, including any award of attorney's fees, but excluding interest and costs." Compl. at 13–14: WHEREFORE Paragraph (emphasis omitted).

19.    "When properly presented by a plaintiff, stipulations may be used, in part, to limit the amount in controversy for the purpose of defeating jurisdiction in this Court." *Young v. GE Cap. Retail Bank*, No. 5:12–cv–01463, 2013 WL 312876, at *5 (S.D. W. Va. Jan. 25, 2013). But in order for such a stipulation to defeat federal jurisdiction, it must be "a formal, truly binding, pre-removal stipulation signed by counsel and his client explicitly limiting recovery." *McCoy v. Erie Ins. Co.*, 147 F. Supp. 2d 481, 485 (S.D. W. Va. 2001). Additionally, "the stipulation should be filed contemporaneously with the complaint, which also should contain the sum-certain prayer for relief." *Id.* at 486. This Court has "indicated that the formality requirement is satisfied when a stipulation is signed and notarized." *Young*, 2013 WL 312876, at *5 (citing *Settle v. One West Bank, FSB*, No. 5:11–cv–00063, 2011 WL 3055263, at *2 (S.D. W. Va. July 25, 2011)).

20.    Although this Court has recognized that the language used in the First Amended Class Action Complaint can defeat federal jurisdiction, *see, e.g.*, *Smith v. Penn Credit Corp.*, No. 3:16-3514, 2016 WL 4153616, at *3 (S.D. W. Va. Aug. 5, 2016) (citing *McCoy v. Synchrony Bank*, No. 2:15-cv-13310, 2015 WL 6386554, at *2 (S.D. W. Va. Oct. 21, 2015)), Plaintiffs' stipulation is not sufficiently formal to be binding. The stipulation—included as an addendum to the Complaint rather than in a separate submission—is signed only by Plaintiffs' counsel, not by Plaintiffs themselves, and it is not notarized. *See* Compl. at 13–14: WHEREFORE Paragraph; *cf., e.g.*, *Hatcher v. Vanderbilt Mortg. & Fin., Inc.*, No. 2:10–cv–00677, 2010 WL 2330392, at *2

8

(S.D. W. Va. June 7, 2010) (noting that a stipulation was deficient because it was "signed by Plaintiffs' counsel, but not by Plaintiffs themselves"); *Taylor v. Cap. One Bank (USA), N.A.*, No. 5:09-cv-00576, 2010 WL 424654, at *2–3 (S.D. W. Va. Feb. 4, 2010) (similar, noting that "a stipulation included within the complaint itself" was "infirm, as it [wa]s not signed by [the plaintiff] or notarized"). Additionally, Plaintiffs have not included a sum-certain prayer for relief, so the stipulation is insufficient on that ground as well. *See, e.g.*, *Parsley v. Norfolk & W. Ry. Co.*, No. 3:17-4322, 2018 WL 813158, at *2 (S.D. W. Va. Feb. 9, 2018) ("[E]ven properly executed stipulations may fail to prevent federal jurisdiction if the complaint fails to state a sum certain prayer for relief."); *Kittredge v. Navy Fed. Credit Union*, No. 3:15-CV-81, 2016 WL 47877, at *3 (N.D. W. Va. Jan. 4, 2016) ("The stipulation would be entirely valid, binding and effective to preclude removal, but for the absence of a sum-certain prayer for relief in the Plaintiffs' state court complaint."); *Nickerson v. Navy Fed. Credit Union*, No. 3:15-CV-75, 2016 WL 55320, at *3 (N.D. W. Va. Jan. 4, 2016) ("The stipulation would be entirely valid, binding and effective to preclude removal, but for the absence of a sum-certain prayer for relief in the Plaintiffs' state court complaint. . . . Instead, the Plaintiffs' complaint [only] seeks damages 'not to exceed $74,999.99'" so "the stipulation, standing alone does not require remand."). Plaintiffs' stipulation therefore fails to defeat federal jurisdiction.

21.  Plaintiffs' allegations place in controversy an amount well in excess of $75,000. Again, it is well settled that a court may rely on a plaintiff's allegations in determining whether the amount-in-controversy requirement has been met. *See, e.g.*, *Scott*, 865 F.3d at 194; *JTH Tax, Inc.*, 624 F.3d at 638; *Evans*, 528 F. Supp. 2d at 605–06; *Landmark Corp.*, 945 F. Supp. at 936. Thus, a plaintiff's good-faith damages and relief claims are to be considered the "amount in controversy" for jurisdictional purposes. *See, e.g.*, *JTH Tax, Inc.*, 624 F.3d at 638.

22. Plaintiffs' individual claims place in controversy an amount well in excess of $75,000 because they claim that the servicer of their loan "added approximately $8,533.96 in fees and expenses that it was not entitled to add to Plaintiffs' principal balance" (Compl. ¶ 35), because they seek both actual and statutory damages for their claims under the West Virginia Consumer Credit and Protection Act (the "Act") (*id.* ¶ 71, 74), and because their individual claim for "Fraud as a Contract Defense" puts at issue the outstanding balance on Plaintiffs' mortgage loan, currently in excess of $200,000 (*id.* ¶¶ 87–96; **Exhibit B**, ¶ 14).

23. Plaintiffs allege that approximately $8,553.96 in improper fees and expenses were added to Plaintiffs' mortgage loan balance. Compl. ¶¶ 29–35. This amount is placed at issue as putative actual damages for Plaintiffs' individual breach of contract (Count II) and unjust enrichment (Count III) claims.

24. Plaintiffs also allege that Shellpoint violated the Act in the following ways: a) charging improper "Pay-to-Pay" fees in the amount of $2.50 on "at least" seven occasions (*id.* ¶¶ 38–39); b) charging the improper "Schd Payment Fee Pmt" in the amount of either $5 or $10 on four occasions (*id.* ¶ 40); c) sending them a letter improperly stating that Shellpoint could collect attorney's fees (*id.* ¶¶ 42–43); and d) charging late fees in an amount $15 greater than the Note allowed on "at least" 19 occasions (*id.* ¶ 52). Because the Act allows a successful plaintiff to recover both actual damages and $1000 in statutory damages for each violation, *see* W. Va. Code § 46A-5-101(1), each instance of the alleged improperly-charged fees, and the sending of the letter, is a separate violation of the Act placing at issue both the amount of the challenged fees, plus $1000 in statutory damages. With "at least" 31 separate alleged violations at issue in their individual claims under the Act (Count I), Plaintiffs have placed in controversy an additional $322.50 in actual damages, plus $31,000 in statutory damages.

25. Finally, Plaintiffs allege that Shellpoint made various misrepresentations and suppressions of material fact in connection with the servicing of their mortgage loan, and they assert that these fraudulent misrepresentations and suppressions are a defense to contract, presumably the documents obligating them to repay the balance of their mortgage loan. At present, Plaintiffs' mortgage loan has an outstanding balance of $207,720.95. *See* **Exhibit B**, ¶ 14. Accordingly, Plaintiffs' fraud claim (Count IV) places that amount in controversy.

26. Plaintiffs' individual claims thus place in controversy approximately $247,000, well in excess of the jurisdictional amount. In addition, Plaintiffs seek an award of an unspecified amount of attorney's fees, which can be considered in determining the amount in controversy. *See* Compl. at 13: WHEREFORE paragraph.

    **B.**    **The parties are diverse.**

27. Plaintiffs Joe and Dena Cox are citizens of West Virginia. Compl. ¶ 5..

28. NewRez, LLC, d/b/a Shellpoint Mortgage Servicing, is a limited liability company organized under the laws of the State of Delaware. *See* **Exhibit B**, ¶ 2–3. "For purposes of diversity jurisdiction, the citizenship of a limited liability company . . . is determined by the citizenship of all of its members." *Cent. W. Va. Energy Co. v. Mtn. State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011). NewRez, LLC has its principal place of business in South Carolina, and its sole member is Shellpoint Partners, LLC. *See* **Exhibit B**, ¶¶ 3–4. Shellpoint Partners, LLC is a Delaware limited liability company, with its principal place of business in New York. *See id.* ¶ 5. It has two members: NRM Acquisition I, LLC and NRM Acquisition II, LLC. *See id.* ¶ 6. NRM Acquisition I, LLC, a Delaware limited liability company with its principal place of business in New York, has one member, New Residential Mortgage, LLC. *See id.* ¶ 7. New Residential Mortgage, LLC is also the sole member of NRM Acquisition II, LLC, a Delaware limited liability

company, with its principal place of business in New York. *See id.* ¶ 8. New Residential Mortgage, LLC is a Delaware limited liability company, with its principal place of business in New York, and its sole member is New Residential Investment Corporation. *See id.* ¶ 9–10. New Residential Investment Corporation is a publicly traded corporation organized under the laws of the State of Delaware, with its principal place of business in New York. *See id.* ¶ 11. A corporation is a citizen of both its state of incorporation and the state in which its principal place of business is located. *See* 28 U.S.C. § 1332(c)(1); *Hertz Corp. v. Friend*, 559 U.S. 77, 79 (2010). Accordingly, Shellpoint is a citizen of Delaware and New York for purposes of diversity jurisdiction.

29. Because Plaintiffs are citizens of West Virginia and Shellpoint is a citizen of Delaware and New York, there is diversity between the parties.

    **C.    In the alternative, this Court has supplemental jurisdiction over the individual causes of action under 28 U.S.C. § 1367(a).**

30. Under 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." *See also Semple v. City of Moundsville*, 195 F.3d 708, 714 (4th Cir. 1999) ("A district court may exercise its discretion in retaining jurisdiction over state law claims made in the case through supplemental jurisdiction pursuant to 28 U.S.C. § 1367 when there is a federal basis for jurisdiction.").

31. Plaintiffs' individual causes of action stem from the same allegations as their class-wide causes of action—thus, they "are so related to" Plaintiffs' class claims "that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. §

1367(a). This Court may therefore exercise supplemental jurisdiction over Plaintiffs' individual causes of action.

### III. All procedural requirements for removal have been satisfied.

32. Shellpoint has satisfied all procedural requirements of 28 U.S.C. §§ 1446 and 1453 and thereby removes this action to the United States District Court for the Southern District of West Virginia.

33. <u>Removal Is Timely.</u> Under 28 U.S.C. § 1446(b)(2)(B), "[e]ach defendant shall have 30 days after receipt . . . of the initial pleading . . . to file the notice of removal." Shellpoint received the summons and First Amended Class Action Complaint by service of process on November 19, 2020. Thus, this Notice is timely filed.

34. <u>Removal to Proper Court.</u> This action is properly removed to the United States District Court for the Southern District of West Virginia, which "embrac[es] the place where such action is pending": Putnam County, West Virginia. 28 U.S.C. §§ 129(b) and 1441(a).

35. <u>Signature.</u> This Notice of Removal is signed pursuant to Fed. R. Civ. P. 11. *See* 28 U.S.C. § 1446(a).

36. <u>Pleadings and Process.</u> As required by 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders served upon Shellpoint is attached hereto as **Exhibit A**.

37. <u>Notice.</u> As required by 28 U.S.C. § 1446(d), Shellpoint will promptly file a Notice of Filing Notice of Removal, with a copy of this Notice of Removal attached, with the clerk of the Circuit Court of Putnam County, West Virginia.

38. If any question arises as to the propriety of the removal of this action, Shellpoint requests the opportunity to submit a brief and evidence and present oral argument in support of its position. *See Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 82 (2014). Shellpoint also requests the opportunity to conduct discovery should that be necessary.

WHEREFORE, Shellpoint respectfully requests that this Court assume jurisdiction over this action as if originally commenced in this Court and for such other relief as deemed necessary by this Court.

Dated: December 18, 2020

          Respectfully submitted,

          **NEWREZ, LLC D/B/A SHELLPOINT MORTGAGE SERVICING**

/s/ Randall L. Saunders
Randall L. Saunders, Esquire (WV Bar No. 10162)
Jonah D. Samples, Esquire (WV Bar No. 13683)
Megan L. Ware-Fitzgerald, Esq. (WV Bar No. 13529)
**NELSON MULLINS RILEY & SCARBOROUGH LLP**
949 Third Avenue, Suite 200
Huntington, West Virginia 25701
Telephone: (304) 526-3500
Facsimile: (304) 526-3599

and

Andrew J. Narod, Esq. (WV Bar No. 13087)
BRADLEY ARANT BOULT CUMMINGS LLP
1615 L Street, N.W., Suite 1350
Washington, D.C. 20036
Telephone: (202) 719-8271
Facsimile: (202) 719-8371
E-mail: anarod@bradley.com

*Counsel for Defendant NewRez, LLC d/b/a Shellpoint Mortgage Servicing*

**SOUTHERN DISTRICT OF WEST VIRGINIA**
**HUNTINGTON DIVISION**

| | |
|---|---|
| **JOE COX and DENA COX, on behalf of themselves and all others similarly situated,** )<br>)<br>)<br>)<br>**PLAINTIFFS**, )<br>)<br>**v.** )<br>)<br>**NEWREZ, LLC d/b/a SHELLPOINT MORTGAGE SERVICING,** )<br>)<br>)<br>**DEFENDANT.** )<br>) | CASE NO.: 3:20-cv-00859 |

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on the 18th day of December, 2020, the foregoing *"Notice of Removal"* was filed with the court through the Court's CM/ECF system which will automatically send electronic notification of the filing and has also been served by U.S. Mail, postage prepaid, at Huntington, West Virginia to the following:

>Benjamin M. Sheridan, Esq.
>Klein & Sheridan, LC
>3566 Teays Valley Road
>Hurricane, WV 25526
>ben@kleinsheridan.com
>
>Patricia M. Kipnis, Esq.
>Bailey & Glasser LLP
>Suite 300
>923 Haddonfield Rd.
>Cherry Hill, NJ 08002
>pkipnis@baileyglasser.com
>
>Jonathan R. Marshall, Esq.
>Bailey & Glasser LLP
>209 Capitol St.
>Charleston, WV 25301
>jmarshall@baileyglasser.com

Jed R. Nolan, Esq.
Nolan Consumer Law, PLLC
P.O. Box 654
Athens, WV 24712
jed@protectwvconsumers.com


                                      /s/ Randall L. Saunders