## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| **JOE COX and DENA COX, on behalf of themselves and all others similarly situated,** )<br><br>)<br>)<br>)<br>**PLAINTIFFS**, )<br>)<br>**v.** )<br>)<br>**NEW REZ, LLC d/b/a SHELLPOINT MORTGAGE SERVICING,** )<br>)<br>**DEFENDANT.** )<br>) | CIVIL ACTION NO.: 3:20-cv-00859 |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT, ATTORNEY'S FEES AND EXPENSES, AND SERVICE AWARD

Plaintiffs Joe and Dena Cox, by counsel and on behalf of the conditionally certified class, hereby respectfully submit this Memorandum in Support of their Motion for Final Approval of Settlement, Attorneys' Fees and Costs, and Service Awards. Plaintiffs respectfully request that the Court enter the parties' proposed Final Approval Order and Judgment:

(1)     Pursuant to Fed. R. Civ. P. 23(e), determining that the Settlement is fair, adequate, and reasonable and granting final approval in all respects of the terms and provisions of the Amended Class Settlement and Release Agreement (ECF No. 63-1) ("Settlement Agreement"), which the Court preliminarily approved by Order entered on September 2, 2022 (ECF No. 65);

(2)     Finally certifying the Settlement Class for settlement purposes only;

(3)     Determining that the Notice Provided to the Settlement Cass satisfied Due Process requirements;

(4)     Awarding Plaintiffs and Class Representatives Joe and Dena Cox service awards of $10,000 each in recognition of their service to the class;

(5)     Awarding Class Counsel their attorneys' fees from the settlement fund in the amount of $1,508,276.27, which represents one-third of the settlement fund attributed to all portions paid for alleged violations except fee schedules;

(6)     Awarding Class Counsel their litigation expenses from the settlement fund in the amount of $13,370.96;

(7)     Awarding the Settlement Administrator its administrative costs and fees from the settlement fund;

(8)     Dismissing on the merits and with prejudice the class and individual claims in this action without costs to Defendant Shellpoint; and

(12)     Retaining jurisdiction over this action for the purpose of interpretation and enforcement of the Settlement Agreement, including oversight of settlement administration and distribution of settlement funds.

For the reasons set forth more particularly below, Plaintiffs respectfully request that the Court grant this Motion, which Defendant does not oppose.

## I.     INTRODUCTION AND PROCEDURAL BACKGROUND

Plaintiffs are pursuing the class action entitled *Joe Cox and Dena Cox, individually and on behalf of a class of similarly-situated persons v. New Rez, LLC d/b/a Shellpoint Mortgage Servicing,* No. 3:20-cv-00859, currently pending before the United States District Court for the Southern District of West Virginia (the "Court"). On November 2, 2020, Plaintiffs filed their First Amended Class Action Complaint against Defendant, case number 40-2020-C-169, in the Putnam County Circuit Court of West Virginia, entitled *Joseph Cox and Dena Cox, on behalf of themselves and all others similarly situated, v. New Rez, LLC d/b/a Shellpoint Mortgage* (the "Action"). The

2

First Amended Class Action Complaint asserted class claims for violations of the West Virginia Consumer Credit Protection Act ("WVCCPA"), breach of contract and unjust enrichment, and an individual claim for fraud as a contract defense arising from Defendant's assessment of various fees to Plaintiffs and a putative class of West Virginians Plaintiffs sought to represent.

Defendant removed the Action to the Southern District of West Virginia on December 18, 2020, where it is pending as Civil Action 3:20-cv-00859 before United States District Judge Robert C. Chambers. Defendant filed its Answer and Affirmative Defenses to Plaintiff's First Amended Class Action Complaint on December 23, 2020.

After the Court entered a Scheduling Order and the Parties exchanged initial disclosures and informally exchanged discovery, the Parties moved to stay all scheduling order deadlines in light of a mediation session scheduled for February 10, 2022. The Court granted that motion on February 7, 2022. The Parties mediated their claims for the first time with experienced mediator Don O'Dell on February 10, 2021. As Mr. O'Dell reported to the Court following that session, the parties mediated for a full day and made progress during that session but did not reach a resolution at that time.

After their first mediation session, the Parties moved to extend certain Scheduling Order Deadlines so that negotiations could continue. The Parties continued to exchange information and negotiate informally through counsel during this time and agreed that a second mediation session would be helpful.

The Parties thereafter continued to negotiate through counsel, and ultimately conducted a second mediation with Mr. O'Dell on April 26, 2022, during which substantial progress was made towards resolution. The Court, upon the Parties' joint motions, extended the Parties' deadline to provide a status report and proposed amended scheduling report several times during this period

upon the Parties' representations that negotiations were proceeding towards resolution of the Plaintiffs' individual and class claims.

Plaintiffs' individual and class claims were finally resolved through arms' length negotiations through counsel in the weeks following this second mediation. The Court entered an Order granting preliminary approval on August 3, 2022. In August 2022, as the Parties were working with the appointed class administrator to provide class data to comply with the notice provisions of the Settlement Agreement and Preliminary Approval Order, Defendant Shellpoint discovered an additional 681 new violations in its records not previously included as violations. The Parties agreed to include these additional violations within the settlement and to correspondingly increase the Settlement Amount from $4,400,000 to $4,584,288.82 so as to provide both existing and new Settlement Class Members with the same per-violation amount the Parties had negotiated for the existing Settlement Class Members.

The Settlement Agreement contemplates Shellpoint's establishing a settlement fund totaling $4,584,288.82. This fund will be used to pay settlement payments to settlement class members, which payments will be allocated on a per-fee basis depending on the type and number of Fees assessed, as defined in the Settlement Agreement to also include certain correspondences sent to settlement class members. This is a significant recovery relative to the maximum potential statutory recovery per class member, which is $1000 per WVCCPA violation adjusted for inflation from September 2015. The settlement fund will also be used to pay attorneys' fees and expenses, costs, any administrative costs, and service awards, subject to Court approval.

Defendants have denied and continue to deny any and all allegations and claims asserted against them in the Complaint and deny any and all allegations of wrongdoing and liability.

On August 31, 2022, Plaintiffs filed their Motion to Amend Class Action Settlement Documents, which reflected the new violation and settlement amounts. ECF No. 63. The Court granted that Motion on September 2, 2022. ECF No. 65.

Within ten days after the proposed settlement was filed and at least 90 days before the final approval hearing, on August 8, 2022, the CAFA notices required under 28 U.S.C. §1715 were served on the appropriate Federal officials and the appropriate state officials. *See* 28 U.S.C. §1715; Declaration of Andrew J. Narod. ("Narod Decl."). ECF No. 61-2.

After preliminary approval, on September 9, 2022, the Settlement Administrator sent the approved Class Notice to the Class Members via first class U.S. Mail, postage prepaid using the addresses provided by Defendant. Declaration of Makenna Snow ("Snow Decl.")

Three Class Members have opted out of the Settlement, and no Class Member has objected to the Settlement. Plaintiffs submit that this is an outstanding settlement worthy of final approval, especially considering the continued expense, risks, and burdens of protracted and contested litigation. The Settlement is, in all respects, fair, adequate, and reasonable, and should be fully and finally approved.

## II.     PROPOSED SETTLEMENT

### A.     Terms of Parties' Settlement Agreement

The Parties' proposed settlement contemplates the certification of a settlement class defined, with reference to specific definitions in the Settlement Agreement, as three subclasses as follows:

- Pay-to-Pay Settlement Subclass: those borrowers to whom Shellpoint charged a One-Time Web Fee or Scheduled Payment Fee between November 2, 2016 and the effective date of the final settlement agreement. Discovery has revealed and the parties agree that Shellpoint charged 9,779 such fees during this period.

- Late Charge Settlement Subclass: those borrowers to whom Shellpoint charged a late fee of $30 between November 2, 2016 and the effective date of the final settlement agreement. Discovery has revealed and the parties agree that Shellpoint charged 3,926 such fees during this period.

- Attorneys' Fee Settlement Subclass: those borrowers to whom Shellpoint sent a Reinstatement Quote or Reinstatement Demand and those borrowers to whom Shellpoint sent a Debt Validation letter or fee schedule between November 2, 2016 and the effective date of the final settlement agreement, where such quotes, demands, letters, or schedules referenced the collection of attorney's fees. Discovery has revealed and the parties agree that Shellpoint sent 4,885 Reinstatement Quotes and Reinstatement Demands, and 4,048 Debt Validation letters and fee schedules during this period.

ECF No. 63-1 at pp. 7-8.

The proposed settlement requires Shellpoint to pay $4,584,288.82 into a Common Fund. This amount is a lump sum payment inclusive of: (1) all Settlement Payments; (2) Class Counsel's Attorneys' Fees and Expenses, including court costs; (3) Administrative Costs of the Settlement Administrator; and (4) any Class Representative service awards.

Settlement Class Members will receive approximately $216 or $271 per fee assessed or communication sent before deduction of Attorneys' Fees and Expenses, Administrative Costs, and any service award.[1] Settlement Payments will be distributed on a one check per loan basis such that Settlement Class Members will receive a single check with a per-fee settlement payment amount as consideration for fully resolving the settled claims. Co-borrowers shall be treated as a single Settlement Class Member and receive a single, shared Settlement Payment. The Settlement Agreement fully protects the rights of Settlement Class Members to make objections to the settlement or to opt-out of the settlement.

---

[1] One sub-category of Fees, specifically class members who were sent a Fee Schedule by Shellpoint, will be released for consideration of a minimum of $20 per Fee.

In consideration for the Settlement, the Class Representatives and each Settlement Class Member have agreed to releases and covenants not to sue as detailed in Section 19 of the Settlement Agreement. ECF No. 59-1, Section 18.

Plaintiff's counsel selected and the Court approved ILYM as the Settlement Administrator, who will field calls and correspondence from Settlement Class Members, and disburse amounts from the Common Fund. The Settlement Administrator's fees and costs will be paid from the Common Fund.

## B.    Notice and Administration Provisions

"In the context of a class action, the due process requirements of the Fifth Amendment require '[r]easonable notice combined with an opportunity to be heard and withdraw from the class.'" *Groves v. Roy G. Hildreth & Son, Inc.*, No. 2:08-cv-820, 2011 WL 4382708 *3 (S.D.W. Va. Sept. 20, 2011) (quoting *In re Serzone Prods. Liability Litig.*, 231 F.R.D. 221, 231 (S.D.W. Va. 2005)); *see also Domonoske v. Bank of Am., N.A.*, 790 F. Supp. 2d 466, 472 (W.D. Va. 2011). Rule 23(c)(2) requires "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2); *see also Helmick v. Columbia Gas Transmission*, No. 2:07-cv-743, 2010 U.S. WL 2671506, at *8 (S.D.W. Va. July 1, 2010); *Muhammad v. Nat'l City Mortgage, Inc.*, No. 2:07-cv-423, 2008 WL 5377783, at *3 (S.D.W. Va. Dec. 19, 2008). The notice must "inform potential class members of the nature of the action, that class members may make an appearance through counsel, that class members may exclude themselves from the settlement, and that the class judgment will have a binding effect on class members who are not excluded." *Groves*, 2011 WL 4382708, at *3; *Helmick*, 2010 WL 2671506, at *8. Silence on the part of potential class members receiving the notice equates to "tacit consent to the court's jurisdiction." *In re Serzone Prods. Liability Litig.*,

231 F.R.D. at 231; *see also Krell v. Prudential Ins. Co. of Am. (In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions)*, 148 F.3d 283, 306 (3d Cir. 1998).

The type of notice to which a member of a class is entitled depends upon the information available to the parties about that person, and the possible methods of identification. *See In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1098 (5th Cir. 1977) (*citing Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)). In determining the reasonableness of the effort required, the court must look to the "anticipated results, costs, and amount involved." *Burke v. Shapiro, Brown & Alt, LLP*, No. 3:14-cv-838, 2016 WL 2894914, at *4 (E.D. Va. May 17, 2016). "[D]ue process is satisfied 'where a fully descriptive notice is sent first-class mail to each class member, with an explanation of the right to opt out.'" *Domonoske*, 790 F. Supp. 2d at 472 (quoting *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985)).

The Parties' Notice of Proposed Class Settlement, attached as Exhibit A to the Settlement Agreement, provided a full description of the nature of the action, proposed settlement, and requested attorneys' fees. *See Domonoske*, 790 F. Supp. 2d at 472. The Notice described in plain English the terms and operation of the settlement, the considerations that caused Class Counsel to conclude that the Settlement is fair and adequate, the procedure for objecting to and opting out of the Settlement, the date of the fairness hearing and the phone number for the Settlement Administrator to inquire about the fairness hearing.

Pursuant to the terms of the Settlement Agreement, Class Counsel conducted a competitive bidding process, and on August 15, 2022, the Parties stipulated to the selection of ILYM as the settlement administrator. ECF No. 60. In accordance with the Settlement Agreement and this Court's Order, the Settlement Administrator distributed, via first class mail, the Court-approved

Class Notice to the Class Members. All Class Members' addresses were updated according to the terms of the Settlement Agreement.

The Settlement Administrator has provided a Declaration, attached as Exhibit A to the Motion, stating in pertinent part as follows with respect to the Notice process:

- On August 16, 2022, ILYM Group received the Court approved text for the Notice Packet from Counsel for Plaintiff. ILYM Group prepared a draft of the formatted Notice Packet, which was approved by the Parties' Counsel prior to mailing.

- On September 02, 2022, ILYM Group received the class data file from Counsel for Defendants, which contained the name, social security number, last known mailing address, and the total number of applicable fees paid per borrower. The data file was uploaded to our database and checked for duplicates and other possible discrepancies. The Class List contained 5,067 individuals.

- As part of the preparation for mailing, all 5,067 names and addresses contained in the Class List were then processed against the National Change of Address ("NCOA") database, maintained by the United States Postal Service ("USPS"), for purposes of updating and confirming the mailing addresses of the Settlement Class Members before mailing of the Notice Packet. The NCOA contains requested change of addresses filed with the USPS. To the extent that an updated address was found in the NCOA database, the updated address was used for the mailing of the Notice Packet. To the extent that no updated address was found in the NCOA database, the original address provided by Counsel for Defendants was used for the mailing of the Notice Packet.

- On September 9, 2022, the Notice Packet was mailed, via U.S First Class Mail, to all 5,067 individuals contained in the Class List.

- As of the date of this declaration, 174 Notice Packets have been returned to our office as undeliverable. Of the 174 returned Notice Packets, none were returned with a forwarding address. ILYM Group performed a computerized skip trace on the 174 returned Notice Packets, in an effort to obtain an updated address for purpose of re-mailing the Notice Packet. As a result of this skip trace, 94 updated addresses were obtained and the Notice Packet was promptly re-mailed to those Settlement Class Members, via U.S First Class Mail.

- As of the date of this declaration, a total of 94 Notice Packets have been re-mailed. Specifically, 94 have been re-mailed as a result of ILYM Group's skip tracing efforts.

- As of the date of this declaration, a total of 80 Notice Packets have been deemed undeliverable as no updated address was found notwithstanding the skip tracing.

- As of the date of this declaration, ILYM Group has received 3 requests for exclusion. The deadline to request exclusion from the Settlement was November 8, 2022.

- As of the date of this declaration, ILYM Group has not received any objections to the Settlement. The deadline to file an objection to the Settlement was November 8, 2022.

- As of the date of this declaration, ILYM Group will report a total of 5,064 Participating Claimants, representing 99.94% of the 5,067 Settlement Class Members.

## III.    THE SETTLEMENT MERITS FINAL APPROVAL

Settlement of class actions must be approved by the Court. Fed. R. Civ. P. 23(e); *In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Practices & Prod. Liab. Litig.*, 952 F.3d 471, 483 (4th Cir. 2020); *Scardelletti v. Debarr*, 43 Fed. Appx. 525, 528 (4th Cir. 2002); *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991); *Domonoske*, 790 F. Supp. 2d at 472. "The primary concern addressed by Rule 23(e) is the protection of class members whose rights may not have been given adequate consideration during the settlement." *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 158; *see also Groves*, 2011 WL 4382708, at *4.

Such approval typically involves a two-step process of "preliminary" and "final" approval. *See Manual for Complex Litigation* § 21.632, at 414 (4th ed. 2004); *Grice v. PNC Mortgage Corp. of Am.*, No. 97-3804, 1998 WL 350581, at *2 (D. Md. May 21, 1998) (endorsing Manual's two-step process); *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 827 (E.D.N.C. 1992). In the first stage, the Parties submit the proposed settlement to the Court for preliminary approval. In the second stage, following preliminary approval, the Class is notified and a fairness hearing scheduled at which the Court will determine whether to approve the settlement. *See Bicking v. Mitchell Rubenstein & Assocs.*, No. 3:11-cv-78, 2011 WL 5325674, at *4 (E.D. Va. Nov. 3, 2011) ("Prior to granting final approval, the court must direct reasonable notice to all potentially affected class members, allow time for objection, and provide a 'fairness hearing.'"). The Court has already granted preliminary approval. "When the court reviews a

10

proposed class action settlement, it acts as a fiduciary for the class." *Lumber Liquidators*, 952 F.3d at 483-84, citing *Sharp Farms v. Speaks*, 917 F.3d 276, 293-94 (4th Cir. 2019).

In determining whether a settlement meets the requirements of Rule 23, the Fourth Circuit has developed multifactor standards for assessing whether a class action settlement is "fair, reasonable, and adequate" under Rule 23(e)(2). *Lumber Liquidators,* 952 F.3d at 484; *Scardelletti*, 43 Fed. Appx. at 528; *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 158. Under Rule 23(e)(2), "[t]he fairness analysis is intended primarily to ensure that a 'settlement is reached as a result of good-faith bargaining at arm's length, without collusion.'" *Berry v. Schulman*, 807 F.3d 600, 614 (4th Cir. 2015) (alteration omitted) (quoting *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 159).

"[W]e have identified four factors for determining a settlement's fairness, which are: (1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel in the area of the class action litigation." *Lumber Liquidators*, 952 F.3d at 484 (citing *Jiffy Lube*, 927 F.2d at 159). The Court should be satisfied that "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Samuel v. Equicredit Corp.*, No. 00-6196, 2002 WL 970396, at *1 n.1 (E.D. Pa. 2002); *In re Vitamins Antitrust Litig.*, MDL No. 1285, 2001 U.S. Dist. LEXIS 25071, at *29-30. "Absent evidence to the contrary, the Court should presume that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion." *Dijkstra v. Carenbauer,* No. 5:11-cv-00152, 2016 WL 6804980, at *2 (N.D. W.Va. July 12, 2016) (Bailey, J.), citing Newberg on Class Actions § 11.28 at 1159 (3d ed. 1992); *Polar Int'l Brokerage Corp. v. Reeve*, 187 F.R.D. 108, 112 (S.D.N.Y. 1999) (the court must

look at the negotiating process leading to settlement in order to ensure that "the compromise be the result of arms'-length negotiations and that plaintiff's counsel have possessed the ... ability ... necessary to effectively represent the class's interests.") (*citing Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1983)).

In determining the adequacy of the proposed settlement, the Court must consider the: (1) relative strength of Plaintiff's case on the merits; (2) existence of any difficulties of proof or strong defenses Plaintiff is likely to encounter if the case proceeds to trial; (3) anticipated duration and expense of additional litigation; (4) solvency of defendant and likelihood of recovery of a litigated judgment; and (5) degree of opposition to the settlement. *Scardelletti*, 43 Fed. Appx. at 528; *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 159; *Groves*, 2011 WL 4382708, at *5; *Loudermilk Servs., Inc.*, 2009 WL 72818, at *3.

Consideration of the applicable factors reveals that the Parties' proposed Settlement Agreement merits final approval. The Parties' settlement was indeed the product of serious, informed, arm's-length, and non-collusive negotiations. Before settling this matter, the Parties seriously litigated this case at arm's-length. They exchanged informal discovery, participated in informal negotiations and two mediations conducted by an experienced mediator. By the time mediation occurred, Plaintiffs' Counsel and Defendant's Counsel, who are both experienced in not only prosecuting complex class action claims such as these but specifically "Pay-to-Pay" litigation, had "a clear view of the strengths and weaknesses" of their case and were in a strong position to make an informed decision regarding the reasonableness of a potential settlement. *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985) *aff'd*, 798 F.2d 35 (2d Cir. 1986).

The Settlement has no obvious deficiencies and does not grant preferential treatment to the class representatives. The intrinsic value of the net settlement payment to Class Members is readily

apparent when one considers the risks inherent in continued and protracted litigation and the expense and delay that accompany the appeal process.

The Settlement is particularly valuable to absent Class Members who, but for the Settlement, likely would be unaware of the existence of their legal claims.  Even if they were aware, given the relatively small amounts of money involved, absent class members and attorneys who may represent them would have little financial incentive to prosecute individual actions. The alternative to bringing this case as a class action is bringing hundreds of individual claims against Defendant. Realistically, the alternative to a class action under the present circumstances is no action at all.

"It has long been clear that the law favors settlement." *United States v. Manning Coal Corp.*, 977 F.2d 117, 120 (4th Cir. 1992). This is particularly true in class actions. *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 311 (3d Cir. 2011); *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998) (noting the "strong judicial policy in favor of settlements, particularly in the class action context"); *Reed v. Big Water Resort, LLC*, No. 2:14-cv-01583-DCN, 2016 WL 7438449, at *5 (D.S.C. May 26, 2016) (quoting same); William B. Rubenstein, 4 *Newberg on Class Actions* § 13.44, n.1 (5th ed. Dec. 2019 Update) (collecting cases).The proposed settlement serves the overriding public interest in settling litigation. *Adkins,* 2022 WL 327739 at *3, citing *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). The complexity, expense, and duration of class action litigation are factors that mitigate in favor of approval of a settlement. *Nicholes v. Combined Ins. Co. of Am.*, No. 5:16-cv-10203, 2019 WL 2575066, at *3 (S.D. W.Va. Feb. 22, 2019). While the Parties could have litigated the case to judgment and taxed the resources of the litigants and the Court, they chose instead rationally and reasonably to forgo the expense

and uncertainty of continued litigation and focus their efforts on achieving a fair and adequate settlement that took the risks of further litigation into account.

Finally, the "opinion of class action counsel, with substantial experience in litigation of similar size and scope, is an important consideration." *Cox,* 2019 WL 164814, at *3 citing *Muhammad*, 2008 WL 4382708, at *4. "'When the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight.'" *Id.* at *4 (quoting *Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2000)). In the present case, appointed class counsel, who recommends the settlement, is skilled and experienced in consumer class actions and specifically in the litigation of Pay-to-Pay fees. *See e.g., Muhammad*, 2008 WL 5377783, at *4 (recognizing that Plaintiff's counsel, Jonathan Marshall of the law firm Bailey & Glasser, LLP is "skilled and experienced in class action litigation, and have served as class counsel in several cases, including consumer lending cases").

## IV.    THE REQUESTED ATTORNEYS' FEES AND COSTS ARE REASONABLE

Awarding attorneys' fees as a percentage of the benefit to the class is the preferable and prevailing method of determining fee awards in class actions that establish common funds for the benefit of the class. The requested award of one-third of the common fund (with the exception of the portion of the fund allocated to fee schedules), for a total of $1,508,276.27, is reasonable under the circumstances of this case.

### A.    The Percentage of Fund Method is the Appropriate Measure for Determining Fees

"The percentage-of-the-fund method, also known as the common fund doctrine, allows attorney's fees to be based on a percentage of the total recovery to the Plaintiff class." *Berry v. Wells Fargo & Co.*, No. 3:17-cv-00304, 2020 WL 9311859, at *11 (D.S.C. 2020),

citing *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The common fund doctrine is one of the earliest recognized exceptions to the "American Rule" which generally requires that litigants bear their own costs and attorneys' fees. Premised on the equitable powers of the court, the common fund doctrine allows a person who maintains a suit that results in the creation, preservation or increase of a fund in which others have a common interest, to be reimbursed from that fund for the litigation expenses incurred. *Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885).

"Although the Fourth Circuit has not determined the preferred method for calculating attorney fees where the common fund has been generated on behalf of a class, nearly all circuits, as well as district courts within this Circuit, that have considered the issue have found that the trial court may use the percentage method." *Dijkstra v. Carenbauer*, No. 5:11-cv-152, 2015 WL 12750449, at *6 (N.D. W. Va. July 29, 2015); *see also Krakauer v. Dish Network, L.L.C.*, No. 1:14-cv-333, 2019 WL 7066834, at *4 (M.D.N.C. Dec. 23, 2019) ("district courts in the Fourth Circuit 'overwhelmingly' prefer the percentage method in common-fund cases"); *Good v. West Virginia-American Water Co.*, No. 14-1374, 2017 WL 2884535, at *20 (S.D. W. Va. July 6, 2017); *Kidrick v. ABC Television & Appliance Rental*, No. 3:97-cv-69, 1999 WL 1027050 *1 (N.D. W. Va. 1999) ("Where there is a common fund in a class settlement, application of a percentage method to calculate an attorney's fee award is now favored.") (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)); *Goldenberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000); *Cook v. Niedert*, 142 F.3d 1004, 1013 (7th Cir. 1998); *In re Thirteen Appeals Arising out of San Juan DuPont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995); *In re Wash. Public Power Supply Sys. Litig.*, 19 F.3d at 1291, 1295 (9th Cir. 1994); *Gottlieb v. Barry*, 43 F.3d 474 (10th Cir. 1994); *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993); *Longden v.*

*Sunderman*, 979 F.2d 1095, 1099 (5th Cir. 1992); *see also In re Cont'l Ill. Sec. Litig.*, 962 F.2d

566 (7th Cir. 1992); *Paul, Johnson, Alston & Hunt v. Graulty,* 886 F.2d 268, 272 (9th Cir. 1989);

*Brown v. Phillips Petroleum Co.,* 838 F.2d 451, 454, 456 (10th Cir.), *cert. denied*, 488 U.S. 822

(1988); *Camden I Condo. Ass'n*, 946 F.2d 768, 773-774 (11th Cir. 1991); *Bebchick v. Wash. Met.*

*Area Transit Comm'n*, 805 F.2d 396, 406-7 (D.C. Cir. 1986). In fact, some circuits mandate use

of the percentage of fund method. *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1271 (D.C. Cir.

1993); *Camden I Condo. Ass'n,* 946 F.2d at 774; *see generally* 1 Alba Conte, *Attorney Fee Awards*

§ 2.02 at 31 (2d ed. 1993); *Court Awarded Attorney Fees, Report of the Third Circuit Task Force*

(*"Task Force Report"*), 108 F.R.D. 237 (1985) (Prof. Arthur R. Miller, Reporter).

The percentage method "is designed to allow courts to award fees from the fund in a

manner that rewards counsel for success and penalizes it for failure." *In re Prudential Ins. Co.*

*Am. Sales Litig.,* 148 F.3d 283, 333 (3d Cir. 1998) (citing *In re Gen. Motors Corp. Pick-Up Truck*

*Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 821 (3d Cir. 1995)). Percentage-based attorneys' fees:

(1) align the interests of claimants and lawyers by rewarding superior
performance and punishing failure;

(2) minimize the need to evaluate the reasonableness of attorneys' efforts *ex post*, which is both time consuming and often hard to do; and

(3) transfer the burden of financing lawsuits and other risks from claimants to attorneys who are better able to bear them.

In keeping with the larger point of this Report, Judge Easterbrook also maintained that

because claimants use contingent percentage fees almost exclusively, judges should use them when

awarding fees in claimant representations. *Kirchoff v. Flynn*, 786 F.2d 320, 326 (7th Cir. 1986);

*see also Muhammad*, 2008 WL 5377783, at *7.

In its 1985 report, the Third Circuit Task Force recommended that in the traditional

common fund situation, a district court "should attempt to establish a percentage fee arrangement."

*Task Force Report,* 108 F.R.D. 237, 255 (1985); *see also Muhammad*, 2008 WL 5377783, at *7. Since that time, the Third Circuit has, on several occasions, "reaffirmed that application of a percentage-of-recovery method is appropriate in common-fund cases." *In re Cendant Corporate PRIDES Litig.,* 243 F.3d 722 (3d Cir. 2001) (collecting cases).

In sum, there is a clear consensus among the federal and state courts, consistent with Supreme Court precedent, that the award of attorneys' fees in common fund cases should be based on a percentage of the recovery. This consensus derives from the recognition that the percentage of fund approach is the better-reasoned and more equitable method of determining attorneys' fees in such cases. *Muhammad*, 2008 WL 5377783, at *7.

**B.    The Percentage Requested by Class Counsel is Fully Supported by the Work Performed, Risks Taken, and Results Obtained**

Both state and federal courts in West Virginia recognize the presumptive reasonableness of an attorneys' fee equal to one-third of a recovery. *Id.* As explained in *Eriksen Const. Co., Inc. v. Morey,* 923 F. Supp. 878, 881 (S.D. W. Va. 1996):

> The Court notes a one-third contingency fee is presumptively reasonable in West Virginia. *See Hayseeds, Inc. v. State Farm Fire & Cas*., 177 W.Va. 323, 352 S.E.2d 73, 80 (1986). Nevertheless, a forty percent (40%) contingency fee is a common fee contract provision for cases that proceed to trial.

*Id*. This authority supports the requested award in this case.

Some courts also consider certain factors in analyzing the reasonableness of fees determined by the percentage of recovery method. *Muhammad*, 2008 WL 5377783, at *8. These factors can include:

> (1) the size of the fund created and the number of persons benefited; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*Cendant*, 243 F.3d at 733 (quoting *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000)) (citations omitted); *see also Muhammad*, 2008 WL 5377783, at *8. The *Gunter* Court instructed that there is no specific formula for analyzing these factors. "Each case is different, and in certain cases, one factor may outweigh the rest." *Gunter*, 223 F.3d at 195 n.1.

All of these considerations warrant an award of the requested fees in this case. The fund established for Class Members is substantial in light of the size of the class. Judging by the fact that only three Class Members has opted out and none have objected to the proposed Settlement, the Class Members overwhelmingly support the settlement.

Additionally, class counsel are skilled and experienced in class action litigation, have served as class counsel in dozens of cases, and were particularly qualified to litigate this case. Bailey Glasser attorneys were appointed as lead class counsel in one of the first filed class action lawsuits in the country to challenge Pay-to-Pay fees, *Montesi v. Seterus, Inc.*, Case No. 50-2015-CA-010910-XXXX-MB (Fla. Cir. Ct. Palm Beach Cty.). *Montesi* was heavily litigated and the trial court certified a class of Florida borrowers over the defendant's opposition. It resulted in a seven-figure settlement, one of the first of its kind, and refunded a substantial amount of the fees collected by the defendant to the class of borrowers.

Bailey Glasser has acted as lead counsel in over a dozen cases involving Pay-to-Pay Fees across the country and is at the forefront of that litigation. In the course of their representation, Bailey Glasser attorneys have obtained contested class certification twice, in the matters, *Torliatt v. Ocwen Loan Servicing, LLC et. al,* No. 3:19-cv-04303-WHO (N.D. Cal.) and in *Williams v. Lakeview Loan Servicing, LLC et al.*, Case No 4:20cv-01900 (S.D. Tex.). Each of these cases involved intensive briefing before both at the trial and appellate courts on both the merits of the claims and the issues surrounding class certification.

18

During the course of their representation, Bailey Glasser attorneys have negotiated substantial recoveries for the classes they represent specifically in litigation challenging Pay-to-Pay fees. These matters include finally-approved settlements in *Caldwell v. Freedom Mortgage Corp.*, No. 3:19-cv-02193-N (N.D. Tex.); *Elbert v. Roundpoint Mortgage Servicing, Corp.*, No. 3:20-cv-00250-MMC (N.D. Cal.); *Fernandez v. Rushmore Loan Servicing*, Case No. 8:21-cv-00621-DOC (C.D. Cal.); *Lembeck v. Arvest Central Mortgage Co.*, No. 3:20-cv-03277-VC (N.D. Cal.); *Phillips v. Caliber Home Loans*, No. 0:19-cv-02711 (D. Minn.); *Pierce v. Statebridge Co.*, No.1:20-cv-117 (M.D.N.C.); *Silveira v. M&T Bank*, No. 2:19-cv-06958-ODW (C.D. Cal.); *Langston v. Gateway Mortgage*, 5:20-CV-01902 (C.D. CAL.); *Vannest v. Nationstar Mortgage, LLC*, 5:21-cv-00086 (N.D. W.Va.); *Thacker v. PHH Mortgage Corp.*, No. 5:21-cv-00174-JPB (N.D. W.Va.) (Bailey, J.); *Alexander v. Carrington Mortgage Services, LLC*, Case No. 1:20-cv-2369-TEB (D. Md.); and *Six v. Loancare, LLC*, 5:21-cv-00451 (S.D. W.Va.).  There are also additional pending settlements where Bailey Glasser attorneys represent the conditionally certified classes that district courts have granted preliminary approval and final approval is pending, including; *Wilson v. Santander Consumer USA, Inc.*, Case No. 4:20-CV-00152 (E.D. Ark.); and *Torliatt v. Ocwen Loan Servicing, LLC et. al,* No. 3:19-cv-04303-WHO (N.D. Cal.)

Each of these cases involved contested litigation over the merits of the claims and settlements that were informed by several district court rulings and appellate court opinions.  For example, in *Alexander*, the trial court initially dismissed all claims, but on appeal, the Fourth Circuit reversed the dismissal and interpreted the FDCPA and Maryland statute to disallow Pay-to-Pay fees that are not expressly authorized by the borrowers' mortgage agreements. *See Alexander v. Carrington Mortg. Services*, LLC, 23 F.4th 370, 372 (4th Cir. 2022).  Accordingly,

Bailey Glasser attorneys have brought a wealth of experience and knowledge of these claims to this matter, which helped streamline the negotiation process in this litigation.

The case involved complex issues related to Defendant's policies and application of state consumer protection law. Considering the possibility of appeals, resolution of the litigation could have taken years, and counsel bore a risk of nonpayment. The outcome of the case was hardly a foregone conclusion, but nonetheless class counsel accepted representation of the Plaintiff and the class on a contingent fee basis, fronting the costs of litigation. "In so doing, counsel have achieved a quite satisfactory settlement result." *Adkins v. Midland Credit Mgmt., Inc.*, No. 5:17-cv-04107, 2022 WL 327739, at *6 (S.D. W.Va. Feb. 3, 2022), quoting *Muhammad*, 2008 WL 5377783, at *8.

Finally, the one-third fee, for a total of $1,508,276.27, requested by counsel is consistent with fee awards in similar common-fund cases. *See Adkins,* 2022 WL 327739, at *7 (awarding one-third of CCPA settlement); *Cox v. BB&T*, No. 5:17-cv-01982, 2019 WL 164814, at **5-6 (S.D. W. Va. Jan. 10, 2019) (awarding one-third of CCPA settlement); *Dijkstra*, 2015 WL 12750449, at *7 (awarding one-third of CCPA settlement); *Archbold*, 2015 WL 4276295, at *6 (same); *Muhammad*, 2008 WL 5377783, at *8 (same); *Triplett v. Nationstar Mortgage, LLC*, No. 3:11-cv-238 (S.D. W. Va. 2012) (same); *Deem v. Ames True Temper, Inc.*, No. 6:10-cv-01339, 2013 WL 2285972 (S.D. W.Va. May 23, 2013) (awarding one-third in settlement involving pension and insurance claims); *Hackworth v. Telespectrum Worldwide, Inc.*, No. 3:04-cv-1271 (S.D. W. Va. 2004) (awarding fees of one-third amount of settlement in WARN Act class action settlement).

Accordingly, consideration of all of these factors overwhelmingly supports the requested award of one-third of the amount of the common fund established for the Class (with the exclusion of the fee schedule portion), for a total of $1,508,276.27.

**C.    The Requested Expenses are Reasonable**

Consistent with the terms of the Settlement Agreement, the WVCCPA's fee-shifting provision entitles a consumer to recover "all or a portion of the costs of litigation" which includes not only "reasonable attorney fees" but "court costs and fees." W. Va. Code § 46A-5-104. West Virginia courts therefore award costs separately from attorney fees to prevailing plaintiffs in WVCCPA actions. *See Cox,* 2019 WL 164814, at *6; *Muhammad,* 2008 WL 5377783 at *9; *Quicken Loans, Inc. v. Brown,* 737 S.E.2d 640, 664 (W. Va. 2012).

As set forth in the declaration of Jonathan Marshall, attached as Exhibit B, Class Counsel have incurred $13,370.96 in reasonable litigation expenses. The vast majority of these expenses were for professional mediation services. The other costs were incurred for filing fees, legal research, travel costs, service of process, and copying/postage.

**D.    The Proposed Service Awards are Justified and Appropriate**

Incentive or service awards reward representative plaintiffs' work in support of the class, as well as their promotion of the public interest. *Adkins v. Midland Credit Mgmt., Inc.*, No. 5:17-cv-04107, 2022 WL 327739, at *6 (S.D. W.Va. Feb. 3, 2022), citing *Archbold v. Wells Fargo Bank, N.A.*, No. 3:13-cv-24599, 2015 WL 4276295, at *6 (S.D. W.Va. July 14, 2015). Courts around the country have allowed such awards to named plaintiffs or class representatives. *See, e.g.*, *Adkins*, 2022 WL 327739, at *7 (awarding each class representative $10,000 out of $995,000 fund); *Dijkstra*, 2015 WL 12750449, at *6 (awarding $10,000 to sole class representative); *In re Celebrex (Celecoxib) Antitrust Litig.*, No. 2:14-CV-00361, 2018 WL 2382091, at *5 (E.D. Va.

Apr. 18, 2018) (awarding $300,000 to class representatives out of $94 million fund); *McCoy v. Health Net, Inc.*, 569 F. Supp. 2d 448, 480 (D.N.J. 2008) (awarding $60,000 to each class representative out of $215 million fund); *Worthington v. CDW Corp.*, No. C-1-03-649, 2006 WL 8411650, at *7 (S.D. Ohio May 22, 2006) (awarding $70,000 to class representatives out of $1.45 million fund); *Bradburn Parent Teacher Store, Inc. v. 3M*, 513 F. Supp.2d 322, 342 (E.D. Pa. 2007) (awarding $75,000 to class representative out of $39.75 million fund); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 373-74 (S.D. Ohio 1990) (awarding $215,000 to several class representatives out of an $18 million fund); *see also Irvine v. Destination Wild Dunes Mgmt., Inc.*, 204 F. Supp. 3d 846, 851 (D.S.C. 2016) (awarding $30,000 to class representatives independent from $179,000 fund).

This district court often notes that incentive awards are "routinely approve[d]." *See, e.g., Good v. West Virginia-American Water Co.*, 2017 WL 2884535, at *30 (S.D. W. Va. July 6, 2017), quoting *Domonoske v. Bank of Am., N.A.,* 790 F. Supp. 2d 466, 476–77 (W.D. Va. 2011). The purpose of such awards is to encourage socially beneficial litigation by compensating named plaintiffs for their expenses on travel and other incidental costs, as well as their personal time spent advancing the litigation on behalf of the class and for any personal risk they undertook. *See Muhammad*, 2008 U.S. Dist. LEXIS 103534, at *25; *Varcallo v. Mass. Mut. Life Ins. Co*., 226 F.R.D. 207, 257 (D.N.J. 2005).

Class members would have received nothing had Mr. and Mrs. Cox not been willing to step up and file this action. Plaintiffs gave their time and effort to prosecute the case for two years. They participated in mediations as well as meetings with counsel and counsel's staff. They consulted with counsel regarding critical aspects of the settlement. They made themselves available to counsel whenever they were needed and stood willing to do whatever tasks would be

asked of them as the case progressed. Accordingly, the proposed service award of $10,000.00 each

is justified and appropriate. *See Adkins*, 2022 WL 327739, at *7; *Cox,* 2019 WL 164814, at *6;

*Archbold*, 2015 WL 4276295, at *6.

## V.    <u>CONCLUSION</u>

For the reasons stated above, Plaintiffs respectfully request that the Court grant this Motion

and all relief requested herein, including entering the parties' proposed Final Approval Order and

Judgment granting final approval of the Settlement Agreement, and for such other and further

relief as the Court may deem appropriate and just.

Respectfully submitted,

<div style="margin-left: 40%">

Plaintiffs,
By Counsel.

</div>

Respectfully Submitted,

*/s/ Patricia M. Kipnis*
Patricia M. Kipnis (WVSB #12896)
Bailey & Glasser LLP
923 Haddonfield Road
Suite 300
Cherry Hill, New Jersey 08002
pkipnis@baileyglasser.com

Jonathan R. Marshall (WVSB #10580)
Bailey & Glasser LLP
209 Capitol Street
Charleston, WV 25301
(304) 345-6555
jmarshall@baileyglasser.com

Benjamin M. Sheridan (WVSB #11296)
Jed R. Nolan (WVSB #10833)
Klein & Sheridan, LC
3566 Teays Valley Road
Hurricane, WV 25526
(304) 562-7111
ben@kleinsheridan.com
jed@kleinsheridan.com
*Counsel for Plaintiffs and the Settlement Class*

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**JOE COX and DENA COX, on behalf of**
**themselves and all others similarly**
**situated,**

   **PLAINTIFFS,**

**v.**

**NEW REZ, LLC d/b/a SHELLPOINT**
**MORTGAGE SERVICING,**

   **DEFENDANT.**

)
)
)
)
)
)
)
)
)
)
)
)
)

 CIVIL ACTION NO.: 3:20-cv-00859

<u>**CERTIFICATE OF SERVICE**</u>

  I, Patricia M. Kipnis, hereby certify that on this 28th day of November 2022, I filed the foregoing document titled *"MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT, ATTORNEY'S FEES AND EXPENSES, AND SERVICE AWARD"* with the Clerk of this Court using the CM/ECF system which will send notification to counsel of record.

         */s/ Patricia M. Kipnis*_____
         Patricia M. Kipnis (WVSB #12896)