IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| JOE COX and DENA COX, on behalf of themselves and all others similarly situated,<br><br>PLAINTIFFS,<br><br>v.<br><br>NEW REZ, LLC d/b/a SHELLPOINT MORTGAGE SERVICING,<br><br>DEFENDANT. | CIVIL ACTION NO.: 3:20-cv-00859 |

**FINAL APPROVAL ORDER AND JUDGMENT**

Pending before the Court is Plaintiffs' Unopposed Motion for Final Approval of Settlement, Attorney's Fees and Expenses, and Service Awards. For the reasons stated in the Plaintiffs' memorandum and for good cause shown, the Motion is **GRANTED**. Accordingly, the Court hereby **FINDS, ORDERS, ADJUDGES, AND DECREES** as follows:

**I.  Background**

In this action, Plaintiffs, on behalf of a class of similarly situated individuals, claimed that Defendant New Rez, LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint") violated the West Virginia Consumer Credit and Protection Act ("WVCCPA") and breached the terms of their mortgage based on Defendant's assessment of various fees as well as Defendant's sending correspondence referencing attorney's fees. Plaintiffs also asserted claims for unjust enrichment and an individual claim for fraud as a contract defense. After the exchange of informal discovery and two mediation sessions with the assistance of an experienced professional mediator, the parties reached a settlement of Plaintiffs' individual and class claims.

Plaintiffs filed their unopposed Motion for Preliminary Approval of Class Action Settlement and the Court entered an Order preliminarily approving the Settlement Agreement on August 3, 2022. On August 31, 2022, Plaintiffs filed their Motion to Amend Class Action Settlement Documents, which reflected new violation and settlement amounts. ECF No. 63. The Court granted that Motion on September 2, 2022. ECF No. 65.

That Order (1) appointed the Settlement Administrator[1], (2) appointed Joe Cox and Dena Cox as Class Representatives, (3) appointed as Class Counsel BAILEY & GLASSER LLP (Jonathan R. Marshall, Patricia M. Kipnis), KLEIN & SHERIDAN LC PC (Benjamin Sheridan), and NOLAN CONSUMER LAW (Jed Nolan), and (4) provisionally certified the following Settlement Class for settlement purposes only:

- Pay-to-Pay Settlement Subclass: those borrowers to whom Shellpoint charged a One-Time Web Fee or Scheduled Payment Fee between November 2, 2016 and the effective date of the final settlement agreement.

- Late Charge Settlement Subclass: those borrowers to whom Shellpoint charged a late fee of $30 between November 2, 2016 and the effective date of the final settlement agreement.

- Attorneys' Fee Settlement Subclass: those borrowers to whom Shellpoint sent a Reinstatement Quote or Reinstatement Demand and those borrowers to whom Shellpoint sent a Debt Validation letter or fee schedule between November 2, 2016 and the effective date of the final settlement agreement, where such quotes, demands, letters, or schedules referenced the collection of attorney's fees.

The Court adopts and incorporates herein those four portions of that Order (ECF No. 65) and finally certifies the Settlement Class for settlement purposes only.

II. **The Settlement Merits Final Approval**

---

[1] The Court approved the Parties' joint selection of class-settlement.com in that Order. In a subsequent joint stipulation, the Parties substituted ILYM as the new settlement administrator. ECF No. 60.

### A.     <u>Class Notice and CAFA Notice is Complete.</u>

The Court finds that the parties have completed all settlement notice obligations imposed for the Notice program approved by this Court in the Order on Motion for Preliminary Approval of Class Action Settlement and Scheduling Order (ECF No. 65). The class notice, which included first-class mailed notice to each class member, constitutes the "the best notice practicable under the circumstances," as required by Rule 23(c)(2). The Notice and completed Notice Program satisfy all applicable requirements of law, including, but not limited to, Federal Rule of Civil Procedure 23(c) and the Constitutional requirement of due process.

The Court has already separately found that Shellpoint provided proper and timely notice of the Settlement Agreement to the appropriate federal and state officials, pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. §1715. ECF no. 62. The Court has reviewed the substance of the notice and finds that it complied with the applicable CAFA requirements. More than ninety (90) days have elapsed since Defendant provided notice pursuant to CAFA, and no objections have been received by the Settlement Administrator, Defendant, or this Court.

### B.     <u>The Settlement is Fair, Adequate, and Reasonable.</u>

Settlement of class actions must be approved by the Court. Fed. R. Civ. P. 23(e); *In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Practices & Prod. Liab. Litig.*, 952 F.3d 471, 483 (4th Cir. 2020); *Scardelletti v. Debarr*, 43 Fed. Appx. 525, 528 (4th Cir. 2002); *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991); *Domonoske*, 790 F. Supp. 2d at 472. "The primary concern addressed by Rule 23(e) is the protection of class members whose rights may not have been given adequate consideration during the settlement." *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 158; *see also Groves*, 2011 WL 4382708, at *4.

Such approval typically involves a two-step process of "preliminary" and "final" approval. *See Manual for Complex Litigation* § 21.632, at 414 (4th ed. 2004); *Grice v. PNC Mortgage Corp. of Am.*, No. 97-3804, 1998 WL 350581, at *2 (D. Md. May 21, 1998) (endorsing Manual's two-step process); *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 827 (E.D.N.C. 1992). In the first stage, the Parties submit the proposed settlement to the Court for preliminary approval. In the second stage, following preliminary approval, the Class is notified and a fairness hearing scheduled at which the Court will determine whether to approve the settlement. *See Bicking v. Mitchell Rubenstein & Assocs.*, No. 3:11-cv-78, 2011 WL 5325674, at *4 (E.D. Va. Nov. 3, 2011) ("Prior to granting final approval, the court must direct reasonable notice to all potentially affected class members, allow time for objection, and provide a 'fairness hearing.'"). The Court has already granted preliminary approval. "When the court reviews a proposed class action settlement, it acts as a fiduciary for the class." *Lumber Liquidators*, 952 F.3d at 483-84, citing *Sharp Farms v. Speaks*, 917 F.3d 276, 293-94 (4th Cir. 2019).

In determining whether a settlement meets the requirements of Rule 23, the Fourth Circuit has developed multifactor standards for assessing whether a class action settlement is "fair, reasonable, and adequate" under Rule 23(e)(2). *Lumber Liquidators,* 952 F.3d at 484; *Scardelletti*, 43 Fed. Appx. at 528; *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 158. Under Rule 23(e)(2), "[t]he fairness analysis is intended primarily to ensure that a 'settlement is reached as a result of good-faith bargaining at arm's length, without collusion.'" *Berry v. Schulman*, 807 F.3d 600, 614 (4th Cir. 2015) (alteration omitted) (quoting *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 159.

"[W]e have identified four factors for determining a settlement's fairness, which are: (1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel

4

in the area of the class action litigation." *Lumber Liquidators*, 952 F.3d at 484 (citing *Jiffy Lube*, 927 F.2d at 159). The Court should be satisfied that "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Samuel v. Equicredit Corp.*, No. 00-6196, 2002 WL 970396, at *1 n.1 (E.D. Pa. 2002); *In re Vitamins Antitrust Litig.*, MDL No. 1285, 2001 U.S. Dist. LEXIS 25071, at *29-30. "Absent evidence to the contrary, the Court should presume that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion." *Dijkstra v. Carenbauer,* No. 5:11-cv-00152, 2016 WL 6804980, at *2 (N.D. W.Va. July 12, 2016), citing Newberg on Class Actions § 11.28 at 1159 (3d ed. 1992); *Polar Int'l Brokerage Corp. v. Reeve*, 187 F.R.D. 108, 112 (S.D.N.Y. 1999) (the court must look at the negotiating process leading to settlement in order to ensure that "the compromise be the result of arms'-length negotiations and that plaintiff's counsel have possessed the ... ability ... necessary to effectively represent the class's interests.") (*citing Weinberger v. Kendrick,* 698 F.2d 61, 74 (2d Cir. 1983)).

In determining the adequacy of the proposed settlement, the Court must consider the: (1) relative strength of Plaintiff's case on the merits; (2) existence of any difficulties of proof or strong defenses Plaintiff is likely to encounter if the case proceeds to trial; (3) anticipated duration and expense of additional litigation; (4) solvency of defendant and likelihood of recovery of a litigated judgment; and (5) degree of opposition to the settlement. *Scardelletti*, 43 Fed. Appx. at 528; *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 159; *Groves*, 2011 WL 4382708, at *5; *Loudermilk Servs., Inc.*, 2009 WL 72818, at *3.

Consideration of the applicable factors reveals that the Parties' proposed Settlement Agreement merits final approval. The Parties' settlement was indeed the product of serious, informed, arm's-length, and non-collusive negotiations. Before settling this matter, the Parties seriously litigated this case at arm's-length. They exchanged informal discovery and participated in many months of informal negotiations and two mediation sessions conducted by an experienced mediator. By the time mediations occurred, Plaintiffs' Counsel and Defendant's Counsel, who are both experienced in not only prosecuting complex class action claims such as these but specifically what Plaintiff refers to as "Pay-to-Pay" litigation, had "a clear view of the strengths and weaknesses" of their case and were in a strong position to make an informed decision regarding the reasonableness of a potential settlement. *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985) *aff'd*, 798 F.2d 35 (2d Cir. 1986).

The settlement has no obvious deficiencies and does not grant preferential treatment to the class representatives. The intrinsic value of the net settlement payment to Class Members is readily apparent when one considers the risks inherent in continued and protracted litigation and the expense and delay that accompany the appeal process.

The settlement is particularly valuable to absent Class Members who, but for the settlement, likely would be unaware of the existence of their legal claims.

"It has long been clear that the law favors settlement." *United States v. Manning Coal Corp.*, 977 F.2d 117, 120 (4th Cir. 1992). This is particularly true in class actions. *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 311 (3d Cir. 2011); *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998) (noting the "strong judicial policy in favor of settlements, particularly in the class action context"); *Reed v. Big Water Resort, LLC*, No. 2:14-cv-01583-DCN, 2016 WL 7438449, at *5 (D.S.C. May 26, 2016) (quoting same); William B. Rubenstein, 4 *Newberg on*

*Class Actions* § 13.44, n.1 (5th ed. Dec. 2019 Update) (collecting cases).The proposed settlement serves the overriding public interest in settling litigation. *Adkins,* 2022 WL 327739 at *3, citing *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). The complexity, expense, and duration of class action litigation are factors that mitigate in favor of approval of a settlement. *Nicholes v. Combined Ins. Co. of Am.*, No. 5:16-cv-10203, 2019 WL 2575066, at *3 (S.D. W.Va. Feb. 22, 2019). While the Parties could have litigated the case to judgment and taxed the resources of the litigants and the Court, they chose instead rationally and reasonably to forgo the expense and uncertainty of continued litigation and focus their efforts on achieving a fair and adequate settlement that took the risks of further litigation into account.

Finally, the "opinion of class action counsel, with substantial experience in litigation of similar size and scope, is an important consideration." *Cox,* 2019 WL 164814, at *3 citing *Muhammad,* 2008 WL 4382708, at *4. "'When the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight.'" *Id.* at *4 (quoting *Rolland v. Cellucci,* 191 F.R.D. 3, 10 (D. Mass. 2000)). In the present case, appointed class counsel, who recommends the settlement, is skilled and experienced in consumer class actions. *See e.g., Muhammad,* 2008 WL 5377783, at *4 (recognizing that Plaintiff's counsel, Jonathan Marshall of the law firm Bailey & Glasser, LLP is "skilled and experienced in class action litigation, and have served as class counsel in several cases, including consumer lending cases").

Accordingly, this court finds that the Settlement is fair, adequate, and reasonable.

C. **The Settlement Agreement's Terms Have Full Force and Effect**

This Court approves in all respects the Settlement of the Action on the terms described in the Settlement Agreement. The Court incorporates the release and covenant not to sue and related provisions set forth in the Settlement Agreement and the Released Parties are released from the Released Claims in accordance with the terms of the Settlement Agreement. (*See* ECF No. 63-1, Section 18). This Court hereby bars and enjoins Plaintiffs and all Settlement Class Members and anyone claiming through or on behalf of any of them from commencing, instituting, asserting, or continuing to prosecute any action or proceeding in any court of law or equity, arbitration tribunal, administrative forum, or other forum of any kind, asserting any of the Released Claims against any of the Released Persons, including without limitation during the pendency of any appeal from this Final Approval Order and Judgment.

### III. The Requested Attorney's Fees and Expenses are Reasonable

The Settlement Agreement provides for an award of Attorneys' Fees and Expenses as approved by this Court. ECF No. 63-1 at § 7.4. Awarding attorneys' fees as a percentage of the benefit to the class is the preferable and prevailing method of determining fee awards in class actions that establish common funds for the benefit of the class. The requested award of Attorneys' Fees in the amount of $1,508,276.27, which represents one-third of the Common Fund (minus that portion of the fund attributed to fee schedules), is reasonable under the circumstances of this case. It is noteworthy that no class member has objected to the Attorney's Fees and Expenses sought by counsel.

### A. The Percentage of Fund Method is the Appropriate Measure for Determining Fees.

"The percentage-of-the-fund method, also known as the common fund doctrine, allows attorney's fees to be based on a percentage of the total recovery to the Plaintiff class." *Berry v. Wells Fargo & Co.*, No. 3:17-cv-00304, 2020 WL 9311859, at *11 (D.S.C. 2020),

citing *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The common fund doctrine is one of the earliest recognized exceptions to the "American Rule" which generally requires that litigants bear their own costs and attorneys' fees. Premised on the equitable powers of the court, the common fund doctrine allows a person who maintains a suit that results in the creation, preservation or increase of a fund in which others have a common interest, to be reimbursed from that fund for the litigation expenses incurred. *Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885).

"Although the Fourth Circuit has not determined the preferred method for calculating attorney fees where the common fund has been generated on behalf of a class, nearly all circuits, as well as district courts within this Circuit, that have considered the issue have found that the trial court may use the percentage method." *Dijkstra v. Carenbauer,* No. 5:11-cv-152, 2015 WL 12750449, at *6 (N.D. W. Va. July 29, 2015); *see also Krakauer v. Dish Network, L.L.C.*, No. 1:14-cv-333, 2019 WL 7066834, at *4 (M.D.N.C. Dec. 23, 2019) ("district courts in the Fourth Circuit 'overwhelmingly' prefer the percentage method in common-fund cases"); *Good v. West Virginia-American Water Co.,* No. 14-1374, 2017 WL 2884535, at *20 (S.D. W. Va. July 6, 2017); *Kidrick v. ABC Television & Appliance Rental*, No. 3:97-cv-69, 1999 WL 1027050 *1 (N.D. W. Va. 1999) ("Where there is a common fund in a class settlement, application of a percentage method to calculate an attorney's fee award is now favored.") (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)); *Goldenberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000); *Cook v. Niedert*, 142 F.3d 1004, 1013 (7th Cir. 1998); *In re Thirteen Appeals Arising out of San Juan DuPont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995); *In re Wash. Public Power Supply Sys. Litig.*, 19 F.3d at 1291, 1295 (9th Cir. 1994); *Gottlieb v. Barry*, 43 F.3d. 474 (10th Cir. 1994); *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993); *Longden v.*

*Sunderman*, 979 F.2d 1095, 1099 (5th Cir. 1992); *see also In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454, 456 (10th Cir.), *cert. denied*, 488 U.S. 822 (1988); *Camden I Condo. Ass'n*, 946 F.2d 768, 773-774 (11th Cir. 1991); *Bebchick v. Wash. Met. Area Transit Comm'n*, 805 F.2d 396, 406-7 (D.C. Cir. 1986). In fact, some circuits mandate use of the percentage of fund method. *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1271 (D.C. Cir. 1993); *Camden I Condo. Ass'n*, 946 F.2d at 774; *see generally* 1 Alba Conte, *Attorney Fee Awards* § 2.02 at 31 (2d ed. 1993); *Court Awarded Attorney Fees, Report of the Third Circuit Task Force ("Task Force Report")*, 108 F.R.D. 237 (1985) (Prof. Arthur R. Miller, Reporter).

The percentage method "is designed to allow courts to award fees from the fund in a manner that rewards counsel for success and penalizes it for failure." *In re Prudential Ins. Co. Am. Sales Litig.*, 148 F.3d 283, 333 (3d Cir. 1998) (citing *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995)). Percentage-based attorney's fees:

> (1) align the interests of claimants and lawyers by rewarding superior performance and punishing failure;
>
> (2) minimize the need to evaluate the reasonableness of attorneys' efforts *ex post*, which is both time consuming and often hard to do; and
>
> (3) transfer the burden of financing lawsuits and other risks from claimants to attorneys who are better able to bear them.

> In keeping with the larger point of this Report, Judge Easterbrook also maintained that because claimants use contingent percentage fees almost exclusively, judges should use them when awarding fees in claimant representations.

*Kirchoff v. Flynn*, 786 F.2d 320, 326 (7th Cir. 1986); *see also Muhammad*, 2008 WL 5377783, at *7.

In its 1985 report, the Third Circuit Task Force recommended that in the traditional common fund situation, a district court "should attempt to establish a percentage fee arrangement."

10

*Task Force Report,* 108 F.R.D. 237, 255 (1985); *see also Muhammad*, 2008 WL 5377783, at *7. Since that time, the Third Circuit has, on several occasions, "reaffirmed that application of a percentage-of-recovery method is appropriate in common-fund cases." *In re Cendant Corporate PRIDES Litig.,* 243 F.3d 722 (3d Cir. 2001) (collecting cases).

In sum, there is a clear consensus among the federal and state courts, consistent with Supreme Court precedent, that the award of attorneys' fees in common fund cases should be based on a percentage of the recovery. This consensus derives from the recognition that the percentage of fund approach is the better-reasoned and more equitable method of determining attorneys' fees in such cases. *Muhammad*, 2008 WL 5377783, at *7.

### B. The Percentage Requested by Class Counsel is Fully Supported by the Work Performed, Risks Taken, and Results Obtained.

Both state and federal courts in West Virginia recognize the presumptive reasonableness of an attorneys' fee equal to one-third of a recovery. *Id.* As explained in *Eriksen Const. Co., Inc. v. Morey,* 923 F. Supp. 878, 881 (S.D. W. Va. 1996):

> The Court notes a one-third contingency fee is presumptively reasonable in West Virginia. *See Hayseeds, Inc. v. State Farm Fire & Cas.*, 177 W.Va. 323, 352 S.E.2d 73, 80 (1986). Nevertheless, a forty percent (40%) contingency fee is a common fee contract provision for cases that proceed to trial.

*Id.*; *see also F.S.&P. Coal Co. v. Inter-Mountain Coals, Inc.,* 179 W. Va. 190, 366 S.E.2d 638 (1988) (a one-third attorneys fee is the "going rate" in contingency fee cases). This authority supports the requested award in this case.

Some courts also consider certain factors in analyzing the reasonableness of fees determined by the percentage of recovery method. *Muhammad*, 2008 WL 5377783, at *8. These factors can include:

> (1) the size of the fund created and the number of persons benefited; (2) the presence or absence of substantial objections by members of the class to the

>   settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*Cendant*, 243 F.3d at 733 (quoting *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000)) (citations omitted); *see also Muhammad*, 2008 WL 5377783, at *8. The *Gunter* Court instructed that there is no specific formula for analyzing these factors. "Each case is different, and in certain cases, one factor may outweigh the rest." *Gunter*, 223 F.3d at 195 n.1.

All of these considerations warrant an award of the requested Attorneys' Fees in this case. The Common Fund established for Class Members is substantial in light of the size of the class. Judging by the fact that only three Class Members have opted out of the proposed Settlement and no Class Member has objected to the proposed Settlement, the Class Members overwhelmingly support the settlement. Additionally, Class Counsel are skilled and experienced in class action litigation, have served as class counsel in dozens of cases, and were particularly qualified to litigate this case, which involved, *inter alia*, the settlement of convenience or "Pay-to-Pay" fees. Bailey Glasser attorneys were appointed as lead class counsel in one of the first filed class action lawsuits in the country to challenge Pay-to-Pay fees, *Montesi v. Seterus, Inc.*, Case No. 50-2015-CA-010910-XXXX-MB (Fla. Cir. Ct. Palm Beach Cty.). *Montesi* was heavily litigated and the trial court certified a class of Florida borrowers over the defendant's opposition. It resulted in a seven-figure settlement, one of the first of its kind, and refunded a substantial amount of the fees collected by the defendant to the class of borrowers.

Bailey Glasser has acted as lead counsel in over a dozen cases involving Pay-to-Pay Fees across the country and is at the forefront of that litigation. In the course of their representation, Bailey Glasser attorneys have obtained contested class certification twice, in the matters, *Torliatt v. Ocwen Loan Servicing, LLC et. al,* No. 3:19-cv-04303-WHO (N.D. Cal.) and in *Williams v.*

*Lakeview Loan Servicing, LLC et al.*, Case No 4:20cv-01900 (S.D. Tex.). Each of these cases involved intensive briefing before both at the trial and appellate courts on both the merits of the claims and the issues surrounding class certification.

During the course of their representation, Bailey Glasser attorneys have negotiated substantial recoveries for the classes they represent specifically in litigation challenging Pay-to-Pay fees. These matters include finally-approved settlements in *Caldwell v. Freedom Mortgage Corp.*, No. 3:19-cv-02193-N (N.D. Tex.); *Elbert v. Roundpoint Mortgage Servicing, Corp.*, No. 3:20-cv-00250-MMC (N.D. Cal.); *Fernandez v. Rushmore Loan Servicing*, Case No. 8:21-cv-00621-DOC (C.D. Cal.); *Lembeck v. Arvest Central Mortgage Co.*, No. 3:20-cv-03277-VC (N.D. Cal.); *Phillips v. Caliber Home Loans*, No. 0:19-cv-02711 (D. Minn.); *Pierce v. Statebridge Co.*, No.1:20-cv-117 (M.D.N.C.); *Silveira v. M&T Bank*, No. 2:19-cv-06958-ODW (C.D. Cal.); *Langston v. Gateway Mortgage*, 5:20-CV-01902 (C.D. CAL.); *Vannest v. Nationstar Mortgage, LLC*, 5:21-cv-00086 (N.D. W.Va.); *Thacker v. PHH Mortgage Corp.*, No. 5:21-cv-00174-JPB (N.D. W.Va.) (Bailey, J.); *Alexander v. Carrington Mortgage Services, LLC*, Case No. 1:20-cv-2369-TEB (D. Md.); *Six v. Loancare, LLC*, 5:21-cv-00451 (S.D. W.Va.). There are also additional pending settlements where Bailey Glasser attorneys represent the conditionally certified classes that district courts have granted preliminary approval and final approval is pending, including *Wilson v. Santander Consumer USA, Inc.*, Case No. 4:20-CV-00152 (E.D. Ark.); and *Torliatt v. Ocwen Loan Servicing, LLC et. al*, No. 3:19-cv-04303-WHO (N.D. Cal.).

Each of these cases involved contested litigation over the merits of the claims and settlements that were informed by several district court rulings and appellate court opinions. For example, in *Alexander*, the trial court initially dismissed all claims, but on appeal, the Fourth Circuit reversed the dismissal and interpreted the FDCPA and Maryland statute to disallow Pay-

to-Pay fees that are not expressly authorized by the borrowers' mortgage agreements. *See Alexander v. Carrington Mortg. Services*, LLC, 23 F.4th 370, 372 (4th Cir. 2022). Accordingly, Bailey Glasser attorneys have brought a wealth of experience and knowledge of these claims to this matter, which helped streamline the negotiation process in this litigation.

The case involved complex issues related to Defendant's policies and application of state consumer protection law. Considering the possibility of appeals, resolution of the litigation could have taken years, and counsel bore a risk of nonpayment. The outcome of the case was hardly a foregone conclusion, but nonetheless class counsel accepted representation of the Plaintiff and the class on a contingent fee basis, fronting the costs of litigation. "In so doing, counsel have achieved a quite satisfactory settlement result." *Adkins v. Midland Credit Mgmt., Inc.*, No. 5:17-cv-04107, 2022 WL 327739, at *6 (S.D. W.Va. Feb. 3, 2022), quoting *Muhammad*, 2008 WL 5377783, at *8.

Finally, the one-third fee, for a total of $1,508,276.27, requested by counsel is consistent with fee awards in similar common-fund cases. *See Adkins*, 2022 WL 327739, at *7 (awarding one-third of CCPA settlement); *Cox v. BB&T*, No. 5:17-cv-01982, 2019 WL 164814, at **5-6 (S.D. W. Va. Jan. 10, 2019) (awarding one-third of CCPA settlement); *Dijkstra*, 2015 WL 12750449, at *7 (awarding one-third of CCPA settlement); *Archbold*, 2015 WL 4276295, at *6 (same); *Muhammad*, 2008 WL 5377783, at *8 (same); *Triplett v. Nationstar Mortgage, LLC*, No. 3:11-cv-238 (S.D. W. Va. 2012) (same); *Deem v. Ames True Temper, Inc.*, No. 6:10-cv-01339, 2013 WL 2285972 (S.D. W.Va. May 23, 2013) (awarding one-third in settlement involving pension and insurance claims); *Hackworth v. Telespectrum Worldwide, Inc.*, No. 3:04-cv-1271 (S.D. W. Va. 2004) (awarding fees of one-third amount of settlement in WARN Act class action settlement).

Accordingly, consideration of all of these factors overwhelmingly supports the requested award of one-third of the amount of the common fund established for the Class (minus that portion attributed to fee schedules), for a total award of Attorneys' Fees in the amount of $1,508,276.27.

### IV.     The Requested Expenses are Reasonable

Consistent with the terms of the Agreement, the WVCCPA's fee-shifting provision entitles a consumer to recover "all or a portion of the costs of litigation" which includes not only "reasonable attorney fees" but "court costs and fees." W. Va. Code § 46A-5-104. West Virginia courts therefore award litigation costs and expenses separately from attorney fees to prevailing plaintiffs in WVCCPA actions. *See Muhammad,* 2008 WL 5377783 at *9; *Quicken Loans, Inc. v. Brown,* 737 S.E.2d 640, 664 (W. Va. 2012).

As set forth in the declaration of Jonathan Marshall, Class Counsel have incurred $13,370.96 in litigation Expenses. The vast majority of these expenses were for professional mediation services. The other expenses were incurred for filing fees, legal research, travel costs, postage/copying, and service of process. The Court finds that the litigation Expenses incurred were reasonable and awards Expenses to be paid to Class Counsel in the amount of $13,370.96.

### V.     The Proposed Service Awards Are Justified and Appropriate

The Amended Settlement Agreement provides for a class representative service award to be paid to Plaintiffs Joe and Dena Cox in the amount of $10,000 each, subject to approval by this Court. ECF No. 63-1 at § 7.5. Incentive or service awards reward representative plaintiffs' work in support of the class, as well as their promotion of the public interest. *Adkins v. Midland Credit Mgmt., Inc.,* No. 5:17-cv-04107, 2022 WL 327739, at *6 (S.D. W.Va. Feb. 3, 2022), citing *Archbold,* 2015 WL 4276295, at *6. Courts around the country have allowed such awards to named plaintiffs or class representatives. *See, e.g., Adkins,* 2022 WL 327739, at *7 (awarding each class

representative $10,000 out of $995,000 fund); *Dijkstra*, 2015 WL 12750449, at *6 (awarding $10,000 to sole class representative); *In re Celebrex (Celecoxib) Antitrust Litig.*, No. 2:14-CV-00361, 2018 WL 2382091, at *5 (E.D. Va. Apr. 18, 2018) (awarding $300,000 to class representatives out of $94 million fund); *McCoy v. Health Net, Inc.*, 569 F. Supp. 2d 448, 480 (D.N.J. 2008) (awarding $60,000 to each class representative out of $215 million fund); *Worthington v. CDW Corp.*, No. C-1-03-649, 2006 WL 8411650, at *7 (S.D. Ohio May 22, 2006) (awarding $70,000 to class representatives out of $1.45 million fund); *Bradburn Parent Teacher Store, Inc. v. 3M*, 513 F. Supp.2d 322, 342 (E.D. Pa. 2007) (awarding $75,000 to class representative out of $39.75 million fund); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 373-74 (S.D. Ohio 1990) (awarding $215,000 to several class representatives out of an $18 million fund); *see also Irvine v. Destination Wild Dunes Mgmt., Inc.*, 204 F. Supp. 3d 846, 851 (D.S.C. 2016) (awarding $30,000 to class representatives independent from $179,000 fund).

This district court often notes that incentive awards are "routinely approve[d]." *See, e.g., Good v. West Virginia-American Water Co.*, 2017 WL 2884535, at *30 (S.D. W. Va. July 6, 2017), quoting *Domonoske v. Bank of Am., N.A.*, 790 F. Supp. 2d 466, 476–77 (W.D. Va. 2011). The purpose of such awards is to encourage socially beneficial litigation by compensating named plaintiffs for their expenses on travel and other incidental costs, as well as their personal time spent advancing the litigation on behalf of the class and for any personal risk they undertook. *See Muhammad*, 2008 U.S. Dist. LEXIS 103534, at *25; *Varcallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 257 (D.N.J. 2005).

Class members would have received nothing had Plaintiffs not been willing to step up and file this action. Plaintiffs gave their time and effort to prosecute the case. They participated in

mediations as well as meetings with counsel and counsel's staff. They consulted with counsel regarding critical aspects of the settlement. They made themselves available to counsel whenever they were needed and stood willing to do whatever tasks would be asked of them as the case progressed. Accordingly, this Court finds that the proposed service award of $10,000.00 per class representative is justified and appropriate and hereby approves the service awards in those amounts. *See Adkins*, 2022 WL 327739, at *7; *Cox,* 2019 WL 164814, at *6; *Archbold*, 2015 WL 4276295, at *6.

### VI. Conclusion

In accordance with the foregoing analysis, the Court **ORDERS** as follows:

(1) Pursuant to Fed. R. Civ. P. 23(e), determining that the Settlement is fair, adequate, and reasonable and granting final approval in all respects of the terms and provisions of the Amended Class Settlement and Release Agreement (ECF No. 63-1) ("Settlement Agreement"), which the Court preliminarily approved by Order entered on September 2, 2022 (ECF No. 65);

(2) Finally certifying the Settlement Class for settlement purposes only;

(3) Determining that the Notice Provided to the Settlement Cass satisfied Due Process requirements;

(4) Awarding Plaintiffs and Class Representatives Joe and Dena Cox service awards of $10,000 each in recognition of their service to the class;

(5) Awarding Class Counsel their attorneys' fees from the settlement fund in the amount of $1,508,276.27, which represents one-third of the settlement fund attributed to all portions paid for alleged violations except fee schedules;

(6) Awarding Class Counsel their litigation expenses from the settlement fund in the amount of $13,370.96;

(7) Awarding the Settlement Administrator its administrative costs and fees from the settlement fund;

(8) Dismissing on the merits and with prejudice the class and individual claims in this action without costs to Defendant Shellpoint; and

(12) Retaining jurisdiction over this action for the purpose of interpretation and enforcement of the Settlement Agreement, including oversight of settlement administration and distribution of settlement funds.

Under Rule 54(b), there being no just reason for delay, the Court directs entry of a final judgment as to the matters determined by this Final Approval Order and Judgment.

The Clerk is requested to forward a copy of this written Final Approval Order and Judgment to all counsel of record.

**IT IS SO ORDERED.**

Entered: _____Dec 5_____, 202_7_

_____
The Honorable Robert C. Chambers
United States District Judge